**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| Burak C. Bingollu, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>One Source Technology, LLC, d/b/a Asurint,<br><br>          Defendant. | No. 0:22-cv-00077-DTS<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

_____

## INTRODUCTION

Plaintiff Burak C. Bingollu ("Plaintiff" or the "Class Representative"), on behalf of himself and the proposed Settlement Class,[1] seeks preliminary approval of a settlement to resolve the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*, claims asserted in the above action against Defendant One Source Technology, LLC, d/b/a Asurint ("Defendant") (together with the Class Representative, the "Parties"). If approved, the Parties' Settlement Agreement will resolve all claims asserted in this action in exchange for a non-reversionary $2,400,000 common Settlement Fund that will provide cash payments to Settlement Class Members.

_____

[1] Capitalized terms used and not defined in this Memorandum have the same meaning as those ascribed to them in the Settlement Agreement, which is attached to the Declaration of John Albanese as Exhibit 1, abbreviated as "S.A." herein.

1

The proposed Settlement is the product of extensive arms-length negotiations by experienced and informed counsel with the assistance of experienced third-party neutral Rodney Max.  The Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate.  Accordingly, the Class Representative respectfully requests the Court: (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes, (3) approve the Parties' proposed notice plan (the "Notice Plan") and direct notice to be distributed to the Settlement Class, and (4) schedule a Final Fairness Hearing approximately 150 days after entering the Preliminary Approval Order.  Defendant does not oppose the relief sought in this Motion.

## PROCEDURAL HISTORY

On December 27, 2021, former named plaintiff Sharon Dekontee Wright ("Ms. Wright") commenced this class action in Minnesota District Court, Hennepin County, alleging that Defendant violated 15 U.S.C. § 1681e(b).  (ECF No. 1-1, the "Original Complaint").  In the Original Complaint, Ms. Wright alleged that Defendant violated the FCRA in two ways.  First, Defendant allegedly had erroneously reported that Ms. Wright's Social Security number ("SSN") could not be "verified."  Second, Defendant had allegedly falsely reported that Ms. Wright had been subject to healthcare-related sanctions as a result of a search of the Fraud Abuse Control Information System ("FACIS").  Ms. Wright brought the Original Complaint on behalf of two purported classes of consumers that corresponded to the two alleged violations of the FCRA asserted therein.  Defendant removed the action to this Court on January 13, 2022 (ECF No.1), and answered the Original Complaint on February 22, 2022 (ECF No. 11).

2

The Parties then engaged in substantial discovery, with Defendant responding to three sets of Requests for Production and two sets of Interrogatories.  (Albanese Decl. ¶ 4.)  The Parties disagreed about the proper scope of discovery and had multiple meet-and-confers regarding their discovery disputes.  (*Id.* ¶ 5.)  Defendant produced over 50,000 documents, including data regarding the putative classes asserted in the Original Complaint, as well as Defendant's dispute files regarding FACIS and SSN trace reporting.  (*Id.* ¶ 6.)  Class Counsel reviewed that data and the other documents produced by Defendant.  (*Id.*)  As a result of the document production, Class Counsel concluded that Ms. Wright's claim related to FACIS reporting was not viable as a class action claim.  (*Id.*)

As for the claim related to Defendant's SSN trace reporting, prior to 2011, SSNs were generated using a pattern whereby the initial digits reflected the date and location of issue. (First Amended Complaint, ECF No. 41 ("FAC") ¶ 37.)  Since June 24, 2011, however, SSNs have been randomly generated.  (*Id.*)  Defendant stated on reports that it did not verify or validate SSNs that may have been issued after June 24, 2011.  (*Id.* ¶ 38.)  But, it is alleged that such SSNs can be validated using various methods, and thus Plaintiff alleged that Defendant's reporting was inaccurate or misleading under the FCRA.  (*Id.* ¶ 40.)

After engaging in significant discovery, the Parties agreed to mediate with third-party neutral Rodney Max.  The Parties engaged in a full-day mediation with Mr. Max on July 18, 2023, and negotiations continued after the session.  During the course of the mediation process, Ms. Wright decided that she would rather pursue her claims against Defendant—including those involving Defendant's FACIS reporting, which, again, Class

Counsel had determined were not suitable for class treatment, Albanese Decl. ¶ 6—on an individual basis.  (ECF No. 35 at 2.)

Ms. Wright thereafter filed a motion to amend to: (1) bring her claims on an individual basis and (2) add Plaintiff Bingollu, whom had also retained Class Counsel, as a class representative to pursue class claims regarding Defendant's SSN trace reporting. (ECF No. 33.)  The Court granted this motion (ECF No. 39), and Plaintiff filed the First Amended Complaint (ECF No. 41).  The relationship between Ms. Wright and Class Counsel thereafter deteriorated; Class Counsel filed a motion to withdraw from representation of Ms. Wright (ECF No. 45), which the Court granted (ECF No. 52).  Ms. Wright then obtained new counsel and resolved her case individually.  (ECF No. 54.)  Class Counsel was not involved at all in the negotiation of Ms. Wright's settlement, and neither Plaintiff nor Class Counsel received any money or other consideration as a result of the settlement of Ms. Wright's claims.  (Albanese Decl. ¶ 7.)  After Ms. Wright's individual claims were dismissed (ECF No. 57), the only claims from the First Amended Complaint that remain are Plaintiff Bingollu's claims, brought on behalf of the Settlement Class, regarding Defendant's SSN trace reporting.

The Parties executed the formal Settlement Agreement on February 29, 2024, and now bring it before the Court for preliminary approval so that the Settlement Class Members may be notified.

## SUMMARY OF THE SETTLED CLAIMS

The Settlement resolves the claims in the First Amended Complaint, specifically the claims asserted on behalf of the Settlement Class alleging that Defendant violated the

FCRA, 15 U.S.C. § 1681e(b), by reporting that it could not verify or validate certain SSNs that may have been issued after June 24, 2011. The Court has not made a ruling on whether Defendant violated the FCRA. Further, Defendant has raised numerous defenses to the claims, vigorously maintains that it has not violated any laws, denies that class treatment is appropriate except for settlement purposes, and denies any liability whatsoever for the claims asserted.

## THE SETTLEMENT AGREEMENT

### A. Overview of Benefits Provided.

To avoid the further costs and burdens of litigation, and without admission of liability, the Parties have agreed to settle. The Settlement is on behalf of the Settlement Class, which is defined as:

> All individuals who were the subject of consumer reports prepared by Defendant from December 27, 2019 to May 1, 2023 about whom Defendant reported: (1) through the SSN Trace Level 2 product, "unable to validate" and/or "not verified"; or (2) individuals who disputed information in the SSN Trace section of their background reports, which was then revised.

(S.A. ¶ 1.43.) The Settlement Class consists of approximately 60,452 individuals and does not include Ms. Wright, who has already released her claims against Defendant. (*Id.*)

In consideration for the release of Settlement Class Members' claims, Defendant will pay $2,400,000 as a common Settlement Fund. (*Id.* ¶ 1.45.) In no circumstance will any portion of this Settlement Fund revert to Defendant. (*Id.* ¶ 4.2.) After any Court-approved deductions for Class Counsel Fees and costs, Administrative Costs, and the Class Representative Service Payment, the remaining amount will be distributed *pro rata* to Settlement Class Members who (1) do not opt out of the Settlement Class and (2) submit a

Claim Form attesting that they suffered some harm from Defendant's SSN trace reporting. (*Id.* ¶ 4.1.)  Additionally, Defendant's records show that there are approximately 94 individuals who disputed information in the SSN Trace section of their reports, which Defendant thereafter revised.  (*Id.*)  These individuals will not have to submit a Claim Form, and will instead receive payment automatically.  (*Id.*)

The precise recovery per Class Member cannot be calculated until the final number of participating Class Members is known.  (Albanese Decl. ¶ 8.)  However, if the Court grants the contemplated Class Counsel fees and costs, Administrative Costs, and Class Representative Service Payment, and assuming no opt outs and a 10% claims rate for those Class Members who are required to return a Claim Form, Class Counsel estimates that net payments would be approximately $230 per Settlement Class Member.  (*Id.*)

If 120 days after the mailing of settlement checks to eligible Settlement Class Members, there remains enough funds in the Net Settlement Amount to issue additional payments of at least $25 per eligible Settlement Class Member (after accounting for the costs of issuing and mailing such payments), there will be a second distribution from the of settlement checks to eligible Class members.  (S.A. ¶ 7.4.6.)  If such a redistribution cannot be made in the first instance, or redistribution is made and funds thereafter remain, the remaining funds will be donated to the Parties' designated *cy pres* recipients: Mid-Minnesota Legal Aid and Southern Minnesota Regional Legal Services. (*Id.*)

In addition, Defendant has made process changes to how it reports results for the SSN Trace section of its background reports, including removing the language at issue on Plaintiff's and Class Members' reports.  (*Id.* ¶ 2.6.)

**B. Settlement Notice Plan.**

After soliciting and reviewing competitive bids, the Parties have selected American Legal Claims Services ("Settlement Administrator" or "Administrator") to serve as the Settlement Administrator.  (S.A. ¶ 5.1.)  The Settlement Administrator will handle the preparation and sending of settlement Notices; receive and track Claim Forms and exclusion requests; implement and maintain the Settlement Website and telephone line; calculate, issue, and mail settlement payments; and perform other administrative tasks. (*See generally* Declaration of Jeffrey Pirrung ("Admin. Decl.").)  Administrative Costs are estimated to be $152,754 and will be requested to be deducted from the Settlement Fund. (*Id.* ¶ 6; *see also* S.A. ¶ 7.2.)

The Parties have agreed to the forms of Email Notice, Long-Form Notice of Settlement, and Postcard Notice (collectively, the "Notices"), attached respectively to the Settlement Agreement as Exhibits A, C, and D.  All Settlement Class Members shall be (1) mailed a Postcard Notice via U.S. mail, with a tear-away Claim Form included, and (2) sent Email Notice, where an email address is available (S.A. ¶ 5.9.1.)  The Long-Form Notice will also be posted on the Settlement Website.  (*Id.* ¶ 5.7.)

Prior to distributing the Postcard Notice and Email Notice, the Settlement Administrator will use appropriate methods to locate and update mailing for Settlement Class Members through the use of any appropriate databases routinely used by the Administrator for the purpose of finding mailing addresses.  (S.A. ¶ 5.3.1.)  Should a Postcard Notice be returned as undeliverable or with a forwarding address, the Administrator will re-mail the Postcard Notice to the forwarding address, and if no

forwarding address was provided, utilize any other legally available database for the purpose of finding a new address and re-mailing.  (*Id.* ¶ 5.9.3.)

The Administrator will also mail and email a Reminder Notice to those who have not submitted a Claim Form, in a form substantially similar to the initial Postcard Notice and Email Notice sent, at least once no later than twenty-one (21) days prior to the Claims Deadline.  (S.A. ¶ 5.3.1.)

All of the Notices inform Class Members of basic information about the Settlement, as well as their rights and the deadlines by which to exercise them.  (*Id.*, Exs. A, C, D.) Further, the Notices inform the Class Members of how to obtain additional information about the Settlement, including the URL for the Settlement Website and a toll-free telephone number.  (*Id.*)  The Postcard Notice will contain a tear-away, business reply Claim Form to complete and return, as well as provide the Claims Deadline, and directions for how Class Members can alternatively complete the Claim Form online.  (*Id.*, Ex. D.) The Claim Form is simple, requiring only an attestation of harm.  (*Id.*)  The Settlement Administrator will be solely responsible for determining whether a Claim Form is valid under the terms of the Settlement Agreement.

The Settlement Website, where the Long-Form Notice will be posted, will also host copies of relevant pleadings and the Settlement Agreement, and allow Class Members to submit Claim Forms and update their contact information online.  (S.A. ¶ 5.7.)  The Settlement Administrator will also maintain a toll-free telephone number with answers to frequently asked questions related to the settlement.  (*Id.* ¶ 5.7.5.)

**C. Objections & Opt Outs.**

The Notices inform Class Members of their right to opt out of, or object to, the Settlement, as well as the deadlines associated with those processes. (S.A., Exs. A, C, and D.) Class Members who choose to opt out must send a written notice to the Settlement Administrator stating the individual's desire to opt out of the Settlement. (S.A. ¶ 6.2.1.) To object, a Class Member must file a written statement of objection with the Clerk of Court, and mail a copy to the Settlement Administrator, containing the case name and number, the basis for and an explanation of the objection, and the name, address, telephone number, and email address of the Class Member making the objection. (*Id.* ¶ 6.3.1.) Any objection must be personally signed by the Class Member, and if represented by counsel, by counsel. (*Id.*)

**D. Class Counsel Fees, Costs, and Class Representative Service Payment.**

The Settlement Agreement contemplates that Class Counsel will petition the Court for Class Counsel Fees in an amount not to exceed one-third of the Settlement Fund, as well as documented, customary costs incurred by Class Counsel to date, also to be deducted from the Settlement Fund. (*Id.* ¶ 7.3.) Class Counsel will also petition the Court for $5,000 as a Class Representative Service Payment for Plaintiff. (*Id.* ¶ 7.4.) Any approved awards will be deducted from the Settlement Fund prior to distribution to participating Settlement Class Members. (*Id.*) Class Counsel will formally petition the Court for these amounts fourteen (14) days prior to the Objection and Exclusion Deadline and will post a copy of the Motion for Class Counsel Fees and Class Representative Service Payment on the Settlement Website so that Class Members can review them prior to the Objection and

Exclusion Deadline.  (*Id.* ¶ 7.3.)  Neither the proposed Class Counsel Fees, nor the proposed Class Representative Service Payment, were negotiated before the other settlement terms were agreed upon, and neither final approval, nor the size of the Settlement Fund, are contingent upon the full amount of any such Fees or Payment being approved.  (*Id.* ¶¶ 7.3, 7.3.2, 7.4, 7.4.1.)

## ARGUMENT

For the reasons set forth below, the relevant factors weigh in favor of the proposed Settlement.  Accordingly, the Court should (1) preliminarily approve the Parties' Settlement, (2) certify the Settlement Class for settlement purposes only, (3) approve the Notice Plan and direct the Notices to be distributed to the Class, and (4) set a date for the Final Fairness Hearing.

### A. Legal Standard

Federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context.  *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) (citing *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1405 (D. Minn. 1987)).  The Eighth Circuit has held that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)).  "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *In re Charter Comm'cn, Inc. Sec. Litig.*,

No. 02-1186, 2005 WL 4045741, *4 (E.D. Mo. June 30, 2005) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 03-015, 2004 WL 3671053, *11 (W.D. Mo. Apr. 20, 2004)).

Rule 23 permits courts to preliminarily certify a class for purposes of effectuating a settlement of the case. Fed. R. Civ. P. 23(e); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793-94 (3rd Cir. 1995) (collecting cases and authority). A court may grant preliminary approval of a class action where the class proposed for settlement satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Fed. R. Civ. P. 23(e) requires judicial approval for class action settlements. The court must determine if a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As a preliminary matter, the court must first determine whether the settlement is within the range of possible approval, such that notice should be given to class members, and a hearing should be scheduled on whether to grant final approval. *White*, 822 F. Supp. at 1399. Per the 2018 amendments to the Federal Rules, in determining whether notice should be sent to class members regarding a settlement, the court should consider:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);[2] and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors are not meant to "displace any factor" previously articulated in the caselaw, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 adv. comm. nn. (2018).

**B. The Settlement Class Meets the Requirements of Fed. R. Civ. P. 23.**

To certify a class, the Court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). The same standards generally apply where certification is sought for settlement purposes only, although issues of manageability at trial are not relevant. *Amchem*, 521 U.S. at 620.

1.    The Requirements of Rule 23(a) are Satisfied.

Under Rule 23(a), one or more persons may sue as representative parties on behalf of a class if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each of these requirements is met here.

---

[2] There are no such agreements here.

### a. Numerosity is Satisfied

In the Eighth Circuit, "[n]o arbitrary rules regarding the necessary size of classes have been established." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). "In general, however, a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *Murphy v. Piper*, No. 16-cv-2623 (DWF/BRT), 2017 WL 4355970, at *3 (D. Minn. Sept. 29, 2017) (internal quotations omitted).

Here, where there are more than 60,000 Settlement Class Members, the Class is sufficiently numerous.

### b. Commonality is Satisfied

For commonality, "the plaintiff [must] demonstrate that the class members have suffered the same injury," and that their common complaint "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338, 350 (2011). "For purposes of the commonality requirement, the relevant inquiry is not whether those common issues predominate, but only whether there is at least a single common contention that satisfies the above criteria." *Khoday v. Symantec Corp.*, No. 11-180, 2014 WL 1281600, *15 (D. Minn. March 13, 2014); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (noting that "a single common question 'will do' for purposes of Rule 23(a)(2)") (quoting *Dukes*, 564 U.S. at 359).

Common issues exist for the Settlement Class here. First, it is a common question whether Defendant's practices regarding reporting that it could not verify or validate

certain SSNs violated the FCRA's requirement, under 15 U.S.C. § 1681e(b), that Defendant follow reasonable procedures to assure maximum possible accuracy. *See, e.g., Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015) (finding common question of whether "there [] reasonable procedures in place (here, the name-only logic) to ensure the maximum possible accuracy of the information"); *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 205 (E.D. Va. 2015) (finding consumer reporting agency's procedures to "raise a common contention of reasonableness that can be resolved with common answers on a classwide basis"); *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, No. 17-5507, 2019 WL 3406593, at *6 (S.D.N.Y. July 29, 2019) (finding "whether defendant followed reasonable procedures to ensure the accuracy of its records" to be a common question).

Likewise, whether Defendant's alleged violations of the FCRA were willful under 15 U.S.C. § 1681n is also a common question. *See, e.g., Souter*, 307 F.R.D. at 207 ("[C]ommon evidence applicable across all class members regarding willfulness will resolve a common contention and drive the litigation forward by common answers."); *Milbourne v. JRK Residential Am., LLC*, No. 12-861, 2014 WL 5529731, at *6 (E.D. Va. Oct. 31, 2014) ("[T]he question of willfulness is also a common question."); *McIntyre v. RealPage, Inc.*, 336 F.R.D. 422, 438 (E.D. Pa. 2020) ("Plaintiff's sole claim, willfulness violation, does not give rise to individual determinations..."); *Taha v. Cty. of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017) ("Clearly, the trier of fact should be able to determine whether a violation was 'willful' by considering common evidence regarding defendants' actions

and intent without taking into account information regarding the individual class members.").

As these questions can be resolved by common proof, commonality is established.

### c. Typicality is Satisfied

Typicality, in turn, "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62. "Factual variations will not necessarily preclude certification if 'the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *City of Farmington Hills Employee Retirement System v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 352 (D. Minn. 2012) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Here, the claims of the Class Representative are typical of those of Settlement Class Members. That is, Defendant allegedly inaccurately reported that it was unable to verify Plaintiff's SSN—just as Defendant allegedly did for all members of the Settlement Class. The Class Representative's claims thus rest on the same legal and factual issues as those of Settlement Class Members. That is the hallmark of typicality.

### d. Adequacy is Satisfied

Lastly, a representative plaintiff must be able to provide fair and adequate protection for the interests of the class. "In order to satisfy the adequacy requirement, Plaintiff must show that: (1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently

similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills*, 281 F.R.D. at 353.

Here, the Class Representative has fairly and adequately represented the interests of the Settlement Class. Plaintiff has provided documents and information to his attorneys, has reviewed the Settlement, and has stayed abreast of case developments and settlement negotiations since he retained Class Counsel. Moreover, the Class Representative has no interests antagonistic to the interests of the Settlement Class, and is unaware of any actual or apparent conflicts of interest with the Settlement Class. (Albanese Decl. ¶ 9.)

Additionally, Class Counsel are adequate. E. Michelle Drake, John Albanese, and Ariana Kiener from Berger Montague PC ("Berger") are experienced in complex class-action litigation and consumer litigation in general, and FCRA litigation in particular. (*See id. generally*; Ex. 2.) They are therefore highly qualified to represent the Class here. (*See id.*) Berger was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since. (*Id.*) The firm has been recognized by courts for its skill and experience in handling major complex litigation. (*Id.*) Moreover, and as relevant to this particular case, E. Michelle Drake, John G. Albanese, and Ariana Kiener, have worked extensively on FCRA class actions and are leaders in the field of consumer litigation. (Albanese Decl. ¶¶ 11-17.)

All told, adequacy is easily established here.

2.      The Requirements of Rule 23(b)(3) are Satisfied.

The Settlement contemplates provisional class certification under Rule 23(b)(3). If the elements of Rule 23(a) are satisfied, then a class action may be certified so long as the

court finds that certain other requirements under Rule 23(b)(3) are met: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

> a. *Predominance is Satisfied*

Predominance is generally found to be met where the resolution of class members' individual claims depends on examining common conduct by a defendant. Such is the case here.

The common factual and legal issues regarding Settlement Class Member's claims are based on the alleged standardized policies and procedures of Defendant. Whether Defendant's (1) procedures were reasonable and (2) alleged violations were willful are common issues that predominate over any individualized concerns. *Soutter*, 307 F.R.D. at 215-16 (finding that common questions concerning both willfulness and reasonableness of defendant's procedures predominated); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010 (finding predominance as "the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner"); *Martinez v. Avantus, LLC*, 2023 WL 112807, at *9 (D. Conn. Jan. 5, 2023) ("[T]he core inquiries in this case—whether the name-matching logic run afoul of the FCRA and whether that violation was willful—can be resolved through generalized proof and are more substantial than any individualized issue.").

Accordingly, common issues predominate.

### b. Superiority is Satisfied

In considering superiority, "courts generally look to the following non-exhaustive list of relevant factors: (1) the interest of class members in individually controlling the prosecution of their claims; (2) the extent and nature of any litigation that has already begun; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action." *Khoday*, 2014 WL 1281600, at *35. "Class actions are also superior if the alleged damages are small, and absent a class action most plaintiffs would not realistically enjoy a day in court." *Id.* at *35. *See also Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 379 (D. Minn. 2013) (finding consumer class action superior because it was "unlikely" that "all class plaintiffs" would bring their own claims); *City of Farmington Hills*, 281 F.R.D. at 357 ("[C]lass members who may not otherwise have the means to litigate their claims will likely benefit greatly from a class action, and a class action will ensure that class members who are otherwise unaware that they possess a claim will have their rights represented.").

A class action in this case is superior to other available methods for the fair and efficient adjudication of the case. A class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone. This is particularly true here, in light of the relatively small amount of the damages claims that would be available to individuals, with the FCRA providing for statutory damages of $100 to $1,000 per violation. Moreover, Rule 23(c) permits individual class members to opt out and pursue their own actions separately if they believe they can recover more in an individual

suit.  *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *St. Louis Heart Ctr., Inc. v. Vein Centers For Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) ("Because the statutory damages available to each individual class member [under the Telephone Consumer Protection Act] are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions…All in all, a class action is superior to other methods of adjudicating this controversy."); *Wiles v. Locateplus Holdings Corp.*, No. 09-4164, 2010 WL 3023909, at *4 (W.D. Mo. Aug. 2, 2010) (finding superiority established and granting class certification because "[d]enying class certification in order to limit recovery by forcing plaintiffs to litigate independently 'has little to recommend it'") (quoting *Murray*, 434 F.3d at 854).

Class adjudication is superior here.

Because the requirements of Rule 23(a) and 23(b)(3) have been met, the Court should conditionally certify the Settlement Class for settlement purposes.

## C.  The Settlement is Appropriate for Approval Under Fed. R. Civ. P. 23(e).

After the analysis of the Rule 23(a) and (b) elements, the Court must then decide whether the proposed settlement is fair, reasonable, and adequate.  Rule 23(e)(2) requires the Court to consider a number of factors to make this determination, specifically whether: (1) the class representative and class counsel have adequately represented the class; (2) the

proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably.  Fed. R. Civ. P. 23(e)(2).

Here, because each of these elements is satisfied, the Court should approve the proposed Settlement.

1.  The Class Representative and Class Counsel Have Adequately Represented the Settlement Class.

As described above, both Plaintiff and Class Counsel have vigorously litigated this matter in order to reach a settlement that provides substantial relief to the Settlement Class. Thus, the Class Representative and Class Counsel have adequately represented the Class in achieving the proposed Settlement.

2.  The Settlement was Reached after Litigation, Discovery, Mediation, and Arms-Length Negotiations Between Experienced and Informed Counsel.

Courts have approved settlements where the parties have engaged in extensive negotiations at an appropriate stage in the litigation when they can evaluate the strengths and weaknesses of the case and the propriety of settlement.  *See*, *e.g.*, *In re Employee Ben. Plans Sec. Litig.*, No. 92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993).

In this case, that is certainly true.  The Parties reached a settlement only after discovery and a thorough investigation of Defendant's policies and procedures, with Defendant producing extensive documents and data.  Further, before agreeing to the Settlement Agreement, there was a mediation conducted by a third-party neutral, and subsequent arms-length negotiations through counsel, all experienced FCRA litigators.

The circumstances under which the Settlement was reached weigh in favor of preliminary approval.  *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-1958, 2013

WL 716088, *6 (D. Minn. Feb. 27, 2013) ("Settlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters.") (internal quotations omitted).

### 3.    The Relief Provided is Adequate.

"In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'" *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). The Court must balance the risks and benefits of litigation against immediate recovery for class members. *Grunin*, 513 F.2d at 124; *Petrovic*, 200 F.3d at 1150. The Court must consider a number of factors, including: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn*, 840 F.2d at 607 (citing *Grunin*, 513 F.2d at 124).

Here, these factors weigh in favor of a finding that the proposed Settlement is adequate. Defendant has contested liability, including willfulness, and there is no guarantee that the Class Representative would ultimately prevail at summary judgment, at trial, or through inevitable appeals. Settlement provides certain monetary recovery which benefits Class Members *now*. Assuming a 10% claims rate, each Settlement Class Member who (1) returns a valid Claim Form or (2) disputed Defendant's SSN trace reporting, which was thereafter corrected, will receive a payment of approximately $230. This is not an insignificant amount and is a reasonable recovery given that the statutory damage range

provided by the FCRA is $100 to $1,000 per violation.  15 U.S.C. § 1681n.  These recoveries also compare favorably to other FCRA settlements, some of which settle for less than $100 per class member, and, specifically, such settlements involving inaccurate reporting. *See, e.g.*, *Legrand v. IntelliCorp Records, Inc.,* No. 1:15-cv-02091 (N.D. Ohio) (Settlement Agreement filed April 24, 2017, ECF No. 83-2, Final Approval Order entered November 1, 2017, ECF No. 94) (payments of $148 to class members who were falsely reported as having government sanctions); *Ryals v. HireRight Solutions, Inc.*, No. 09-cv-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement for inaccurate criminal record reporting, providing $15-$200 gross per class member); *Roe v. IntelliCorp Records, Inc., Insurance Info. Exchange, LLC*, No. 1:12-cv-2288-JG (N.D. Ohio) (Stipulation of Settlement filed Oct. 18, 2013, ECF No. 121; Final Approval Order entered June 5, 2014, ECF No. 139) (class members received between $50 and $270 in case alleging that criminal background checks were inaccurate); *Speers v. Pre-Employ.com, Inc.*, No. 3:13-cv-1849-TC (D. Or.) (Settlement Agreement filed July 30, 2015, ECF No. 66-1; Final Approval Order entered Feb. 10, 2016, ECF No. 83) (class members in case alleging out-of-date and incomplete background checks received about $153 each); *Ridenour v. Sterling Infosystems, Inc.*, No. 2:15-cv-00041 (E.D. Va.) (Preliminary Approval Order entered February 15, 2017, ECF No. 173, Final Approval Order entered July 26, 2017, ECF No. 204) (settlement involving inaccurate and incomplete background checks providing about $87 per class member).

The benefits provided under the Settlement thus provide an immediate and significant percentage of potential recovery should the Class have prevailed at trial,

particularly given that Plaintiff's success on the merits was far from assured. "As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (internal citation omitted).

Further litigation presents serious risks to recovery, and Class Counsel and the Class Representative have determined that the Settlement presented here is in the Class's best interests. Defendant continues to deny liability, and the Class Representative has yet to survive class certification, summary judgment, and likely appeals. Establishing liability in this case was far from certain.

Notably, "it is well established that the FCRA is not a strict liability statute." *Murphy v. Midland Credit Mgmt., Inc.*, 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006) (citing *Hauser v. Equifax, Inc.,* 602 F.2d 811, 814 (8th Cir. 1979)). Plaintiff would have had to show that Defendant's violations were "willful" in order to recover statutory damages on behalf of the Settlement Class. 15 U.S.C. § 1681n. This can be a high bar and presents a real risk to recovery. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). Indeed, FCRA plaintiffs can lose on this standard even after a successful verdict at trial. *See Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict, holding that consumer

23

reporting agency's conduct did not constitute a willful violation of the FCRA); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment.").

Thus, the risks of further litigation warrant settlement approval here. *Yarrington v. Solvay Pharma., Inc.* No. 09-2261, 2010 WL 11453553, \*9 (D. Minn. March 16, 2010) (finding class counsel had "exhaustively assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal" where parties had extensive motion practice, exchanged discovery, and engaged in mediation); *see also Keil*, 862 F.3d at 695 (this factor "weighs in favor of approving the settlement because the outcome of the litigation would be far from certain if the case had not settled, whereas the settlement provides substantial benefits to the class." (internal quotations omitted)).

Finally, at this preliminary stage, the Court must evaluate whether the expense and complexity of further litigation weighs in favor of approving the settlement. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Keil*, 862 F.3d at 698 (citation omitted). Where continued litigation could involve months of additional pre-trial litigation, a lengthy trial, and inevitable appeals, this factor weighs in favor of settlement approval. *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009).

Here, at the time the Parties reached the Settlement, there was substantial litigation left to conduct, as noted above, including class certification, summary judgment, expert

discovery, pretrial motions, trial, and appeals.  Should the lengthy litigation process have continued, the Class would have continued to receive no relief.  Instead, here, the Settlement provides monetary benefits *now*.  This factor favors approval.  *See, e.g., In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1100 (D. Minn. 2009) ("The case would have continued, and 'all the while the class members would receive nothing.'") (citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005)).  "Even if plaintiffs recovered more after trial and after appeal, it is highly questionable whether any additional sum would be more valuable than an immediate payment." *Id.* at 1100.

Finally, the payment process here mitigates any concern regarding the timing of payment of Class Counsel Fees.  This is not a case with a multi-year claims process where attorneys receive their full payment after approval but class members have to wait.  Here, Settlement Class Member payments and the approved Class Counsel Fees will be paid around the same time.

4.    Class Members Are Treated Equitably.

Lastly, Settlement Class Members are treated equitably.  All Settlement Class Members who submit a valid Claim Form or are entitled to automatic payment will receive a *pro rata* (i.e., equal) payment from the Settlement Fund.

Further, it is fair to require those Settlement Class Members who did not dispute Defendant's SSN reporting to submit a Claim Form attesting to having experienced harm. Absent having made a dispute, there is no guarantee that Defendant's allegedly inaccurate SSN trace reporting resulted in any adverse consequences for the Class Member.  Thus, it

is reasonable to require that Settlement Class Members who did not dispute their report submit a simple Claim Form, with an attestation of harm, in order to recover under the Settlement. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, *12 (S.D.N.Y. Nov. 12, 2004) (requiring claim form signed under penalty of perjury was "important in helping to insure that the settlement fund is distributed to class members who deserve to recover from the fund"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 235 (S.D. Ill. 2001) (similar requirement found to be "appropriate and not objectionable."). Indeed, in FCRA settlements specifically, it is not unusual for a class member to have to submit an attestation of harm in order to receive greater relief or, as here, any relief at all. *See, e.g., Taylor v. Inflection Risk Sols., LLC*, No. CV 20-2266 (PAM/DTS), 2022 WL 16949543 (D. Minn. Nov. 15, 2022) (approving settlement where some class members were required to submit claim forms and others were not); *Dougherty*, ECF No. 66 (final approval of settlement requiring certain class members to submit a claim form with attestation of harm); *Thomas v. Backgroundchecks.com*, No. 13-29, ECF No. 115 (E.D. Va. Aug. 11, 2015) (final approval of FCRA settlement with some class members being eligible to receive additional payments by asserting certain types of harm); *Ridenour v. Multi-Color Corp., Sterling Infosystems, Inc.*, No. 15-41, ECF No. 204 (E.D. Va. July 26, 2017) (final approval of class settlement under which class members who had disputed their reports received automatic payments, while others had to submit claim form with attestation in order to recover).

In total, the factors considered at preliminary approval all weigh in favor of the Settlement presented here.

**D. The Court Should Approve the Proposed Notice Plan.**

Fed. R. Civ. P. 23(e) additionally requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic*, 200 F. 3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Parties' proposed Notices (S.A. Exs. A, C, D), along with the plan of distribution (via U.S. mail, email, and posting on the Settlement Website, as well as the issuing of reminder notice prior to the Claims Deadline), certainly meets this standard. All Settlement Class Members will receive: (1) a Postcard Notice, with a Claim Form included, (2) an Email Notice, if an email address is provided, and (3) as appropriate, a reminder notice. All Notices provide information about the settlement terms, Class Members' rights, and the deadlines by which to exercise them. (*Id.*) The Notices further direct Class Members to visit the Settlement Website, which will host the detailed Long-Form Notice of Settlement, as well as the Settlement Agreement and relevant pleadings.

The Parties' proposed plan to distribute Notices to Class Members should be approved. *Zaun v. Al Vento, Inc.*, No. 11-2024, 2013 WL 236508, at *2 (D. Minn. Jan. 17, 2013) (finding "class members received adequate and timely notice of the settlement," where administrator sent notice via email to the class list, and posted on a web portal, and published in one local publication for 4 weeks); *Yarrington*, 2010 WL 11453553 at *4, *5

27

(finding notice program had satisfied Fed. R. Civ. P. 23(e) requirements where notice was sent via mail, posted on settlement website, and published).

### **CONCLUSION**

Based on the foregoing, the Court should (1) preliminarily approve the Parties' Settlement, (2) certify the Settlement Class for settlement purposes, (3) approve the proposed Notice Plan, and (4) schedule a Final Fairness Hearing approximately 150 days after the Court enters the Preliminary Approval Order.

Respectfully submitted,

Dated: March 1, 2024

/s/John G. Albanese
BERGER MONTAGUE PC
John G. Albanese, Bar No. 0395882
E. Michelle Drake, Bar No. 0387366
Ariana Kiener, Bar No. 0402365
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999
F. 612.584.4470
jalbanese@bm.net
emdrake@bm.net
akiener@bm.net

*Attorneys for Plaintiff*