## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Burak C. Bingollu, on behalf of himself and all others similarly situated,

Plaintiff,

v.

One Source Technology, LLC, d/b/a Asurint,

Defendant.

No. 0:22-cv-00077-DTS

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

## <u>INTRODUCTION</u>

Plaintiff Burak C. Bingollu ("Plaintiff" or the "Class Representative"), on behalf of himself and the Settlement Class,[1] seeks final approval of the settlement to resolve the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, claims asserted in the above action against Defendant One Source Technology, LLC, d/b/a Asurint ("Defendant") (together with Plaintiff, the "Parties"). Plaintiff's Motion for Final Approval ("Motion") and the requests made herein—which Defendant does not oppose—should be granted.

<u>First</u>, a close analysis of both the relevant Rule 23(e)(2) factors, as well as the additional (though often overlapping) factors considered by the Eighth Circuit at final approval, demonstrates that the Settlement is fair, reasonable, and adequate. The Settlement

---

[1] Capitalized terms used and not defined in this Memorandum have the same meaning as those ascribed to them in the Settlement Agreement (or "S.A."), which was filed with the Court at ECF No. 66-1.

ends more than two years of litigation, providing immediate and significant monetary and injunctive relief to members of the Settlement Class (or "Class") while, at the same time, avoiding the certain risks, costs, and delay posed by continued litigation. Moreover, Class Members' response to the Settlement has been positive, with zero Class Members objecting to the Settlement and only six opting out. In addition, the 4.56% claims rate is well in line with claims rates for consumer class action settlements that achieve final approval.

Second, continued certification of the Settlement Class is appropriate, as all of the requirements of Rules 23(a) and 23(b)(3) are readily satisfied. Third, the Settlement's robust Notice Plan easily meets the requirements of Rule 23 and due process. Direct Notice was provided—via Postcard, Email, and/or Reminder Notices—to over 96% of the Class. Class Members also had access to the informative Settlement Website and toll-free telephone hotline. Finally, the Settlement Administrator (or "Administrator") should be reimbursed for its out-of-pocket expenses in administering the Settlement.

For these reasons, discussed further herein, Plaintiff's Motion should be granted.

## **BACKGROUND**

The history of this litigation and the Settlement are set forth in more detail in the memoranda in support of Plaintiff's Motion for Preliminary Approval (ECF No. 65) and Motion for Attorneys' Fees, Costs, and Class Representative Service Award (ECF No. 72, "Motion for Attorneys' Fees"), which are incorporated herein by reference, and therefore will be only briefly summarized here.

## I.    Procedural History

On December 27, 2021, former named plaintiff Sharon Dekontee Wright ("Ms. Wright") commenced this class action in Minnesota District Court, Hennepin County, alleging that Defendant violated 15 U.S.C. § 1681e(b). (ECF No. 1-1). Defendant removed the action to this Court on January 13, 2022 (ECF No. 1), and filed its answer on February 22, 2022 (ECF No. 11). Discovery thereafter commenced.

On July 18, 2023, the Parties participated in a full-day mediation with third party neutral Rodney Max, after which negotiations continued. During the mediation process, Ms. Wright decided to pursue her claims against Defendant on an individual basis. Accordingly, she filed a motion to amend, which the Court granted, to: (1) bring her claims on an individual basis, and (2) add Plaintiff Bingollu as a class representative to pursue class claims regarding Defendant's SSN reporting. (ECF Nos. 33, 39.) Plaintiff then filed the First Amended Complaint (ECF No. 41, "FAC"). Class Counsel later filed a motion to withdraw from representation of Ms. Wright, which the Court granted, after which Ms. Wright obtained new counsel and resolved her case individually. (ECF Nos. 45, 52, 54.)

After continuing to negotiate for several months, the Parties executed the Settlement Agreement on February 29, 2024. On April 4, 2024, the Court granted preliminary approval of the Settlement and authorized distribution of Notice to the Class. (ECF No. 70.)

## II.    Notice & Class Member Reaction

### A.    Class Action Fairness Act Notice

On March 11, 2024, pursuant to 28 U.S.C. § 1715, the Administrator sent notice of the Settlement and related materials to the Attorneys General of all U.S. states and

territories, as well as the Attorney General of the United States. (ECF No. 75, "Admin. Decl." ¶ 3.)

B.    **Class List**

Defendant provided the Administrator with information on Settlement Class Members, which the Administrator thereafter validated and updated. (*Id.* ¶ 4.) Ultimately, the Administrator identified, and was provided with the names and street addresses for: (1) 60,405 Class Members for whom a Claim Form was required, and (2) an additional 87[2] Class Members who are entitled to autopay, for a total Class of 60,492 Class Members. (*Id.*) The Administrator was later provided with valid email addresses for 34,274 Class Members in the former category, and all 87 Class Members in the latter category. (*Id.*)

C.    **Postcard Notice, Email Notice, and Reminder Notice**

On May 14, 2024, for the 60,405 Class Members who were required to submit a Claim Form, the Administrator sent the Court-approved Class Notice – Claim Required to (1) 60,405 Class Members with street addresses, via direct mail ("Postcard Notice"), and (2) 34,274 class members with email addresses, via email ("Email Notice"). (*Id.* ¶ 5.) Also on May 14, 2024, the Administrator sent the Court-approved Class Notice – Auto Pay, via both direct mail and email, to the 87 Class Members entitled to autopay. (*Id.*) For mailed Notices returned by USPS as undeliverable, the Administrator conducted address searches

---

[2] The Parties initially estimated that there were approximately 94 individuals who disputed information in the SSN Trace section of their reports which Defendant thereafter revised. (S.A. ¶ 4.1.) Ultimately, the Settlement Administrator determined that there are 87 such individuals.

using a nationally recognized location service to attempt to locate new addresses for these Class Members, and has remailed Notices to the updated addresses. (*Id.* ¶ 6.)

On July 5, 2024, the Administrator sent a Reminder Notice to each Class Member who had not yet submitted a Claim Form (minus the 87 not required to do so), either by (1) email, if the Administrator had the Class Member's valid email address, or (2) USPS, if the Administrator did not have the Class Member's valid email address. (*Id.* ¶ 7.) All told, Notice was successfully delivered via email and/or mail to 96.70% of the Class. (*Id.* ¶ 8.)

### D.    Website and Hotline

On May 14, 2024, the Administrator launched the Settlement Website, which contains important documents, including copies of the Long Form Notice, Preliminary Approval Order, Settlement Agreement, Answer, and First Amended Complaint. (*Id.* ¶ 9.) The Settlement Website also hosts answers to frequently asked questions, lists important dates, and allows Class Members to submit a Claim Form and/or update their address online. (*Id.*) As of August 14, 2024, the Settlement Website had been visited by 7,622 unique visitors and had 38,942 page views. (*Id.*)

Also on May 14, 2024, the Settlement Administrator established a toll-free telephone hotline for Class Members to learn more about the Settlement. (*Id.* ¶ 10.) This hotline provided responses to frequently asked questions through an interactive voice response system, as well as an opportunity to speak with a live agent. (*Id.*) As of August 14, 2024, 1,090 callers had spent a total of 2,911.2 minutes on the hotline. (*Id.*)

### E.    Class Member Reaction

The deadline for Class Members to postmark opt-outs or objections passed on July 13, 2024. No Class Member has objected to the Settlement, and six Class Members have opted out. (*Id.* ¶¶ 12-13.) Additionally, the deadline for Claim Forms to be postmarked or submitted online passed on July 28, 2024. 2,757 Claim Forms were received, representing a 4.56% claims rate. (*Id.* ¶ 11.) The Administrator has validated 2,674 of those claims to date as of August 14. 2024. (*Id.*)

On June 27, 2024, Class Counsel filed their Motion for Attorneys' Fees, which reflected the requests that had been included in all Notices sent to the Class. (ECF No. 71.) No Class Members have objected to the requests contained therein. (Admin. Decl. ¶ 13.)

## III.    Relief Provided by the Settlement

The Settlement is on behalf of the Settlement Class, which is defined as:

All individuals who were the subject of consumer reports prepared by Defendant from December 27, 2019 to May 1, 2023 about whom Defendant reported: (1) through the SSN Trace Level 2 product, "unable to validate" and/or "not verified"; or (2) individuals who disputed information in the SSN Trace section of their background reports, which was then revised.

(S.A. ¶ 1.43.) The Settlement Class does not include Ms. Wright. (*Id.*)

In consideration for the release of Settlement Class Members' claims, Defendant will pay $2,400,000 as a common Settlement Fund. (*Id.* ¶ 1.45.) In no circumstance will any portion of this Settlement Fund revert to Defendant. (*Id.* ¶ 4.2.) After any Court-approved deductions for Class Counsel's fees and costs, Administrative Costs, and the Class Representative Service Payment, the remaining amount will be distributed *pro rata* to Settlement Class Members who (1) do not opt out of the Settlement Class and (2) submit

a Claim Form attesting that they suffered some harm from Defendant's SSN trace reporting. (*Id.* ¶ 4.1.) Additionally, the 87 individuals who disputed information in the SSN Trace section of their reports which Defendant thereafter revised, will not have to submit a Claim Form, and will instead receive payment automatically. (*Id.*)

If the Court grants the contemplated Class Counsel fees and costs, Administrative Costs, and Class Representative Service Payment, and if all remaining Claims yet to be processed by the Administrator are validated, Class Counsel estimate that net payments will be approximately $510 per Class Member.

If 120 days after the mailing of settlement checks to eligible Class Members, there remain enough funds in the Net Settlement Amount to issue additional payments of at least $25 per eligible Class Member (after accounting for the costs of issuing and mailing such payments), there will be a second distribution to eligible Class Members. (S.A. ¶ 7.4.6.) If such a redistribution is not feasible, or redistribution is made and funds thereafter remain, the remaining funds will be donated to the Parties' designated *cy pres* recipients: Mid-Minnesota Legal Aid and Southern Minnesota Regional Legal Services. (*Id.*)

Lastly, Defendant has made process changes to how it reports results for the SSN Trace section of its background reports, including removing the language at issue on Plaintiff's and Class Members' reports. (*Id.* ¶ 2.6.)

## LEGAL STANDARD

### I.    Whether the Settlement is Fair, Reasonable, and Adequate

A court may approve a settlement if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement of class actions is favored in light of the

7

uncertainties inherent in such complex litigation. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."). The review and approval of a proposed class action settlement is within the broad discretion of the court. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). "A class-action settlement agreement is 'presumptively valid.'" *In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at *1 (D. Minn. Mar. 24, 2022) (quoting *Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013)).

In determining whether the settlement is "fair, reasonable, and adequate," the Court is required to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3);[3] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Eighth Circuit has also held that district courts should consider "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's

---

[3] There are no such agreements here.

financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

## II.    Whether Certification is Appropriate Under Rule 23

"A district court may not certify a class until it 'is satisfied, after a rigorous analysis,' that Rule 23(a)'s certification prerequisites are met." *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir.) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). "To certify a Settlement Class for the purpose of settlement the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied." *Kruger v. Lely N. Am., Inc.*, 2023 WL 5665215, at *2 (D. Minn. Sept. 1, 2023) (citation omitted). Under Rule 23(a), one or more persons may sue as representative parties on behalf of a class if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

## III.    Whether Notice was Adequate

Fed. R. Civ. P. 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation." *Phillips v. Caliber Home Loans, Inc.*, 2022 WL 832085, at *5 (D. Minn. Mar. 21, 2022) (citing Fed. R. Civ. P. 23(c)(2)(B)). "The mechanics of the notice process are left to the discretion of the district court and are subject only to the

'reasonableness' standards required by due process." *Cleveland v. Whirlpool Corp.*, 2022 WL 2256353, at *8 (D. Minn. June 23, 2022) (citing *Grunin*, 513 F.2d at 121).

## ARGUMENT

For the reasons set forth below, all of the relevant considerations support final approval of the Settlement. The Motion should therefore be granted.

## I.    The Settlement is Fair, Reasonable, and Adequate

The Settlement should be approved because it is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2), as well as the *Van Horn* factors.

### A.    The Settlement Satisfies Each of the Rule 23(e)(2) Factors

#### i.    Class Representative and Class Counsel Have Adequately Represented the Settlement Class

The first consideration under Rule 23(e)(2) "pertains to whether '(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Cleveland*, 2022 WL 2256353, at *4 (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982)). Here, as previously acknowledged by the Court, and as discussed further below in the context of Rule 23(a)(4), Class Counsel and Plaintiff have adequately represented the Class. (*See* ECF No. 70 at 3-5).

#### ii.    The Settlement was Negotiated at Arm's Length

The Court next considers whether the Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Parties reached the Settlement only after discovery and a thorough investigation of Defendant's policies and procedures, with Defendant

producing extensive documents and data. Further, before agreeing to the Settlement Agreement, the Parties participated in mediation with a skilled third party neutral, and subsequent arms-length negotiations over the course of several months. Finally, counsel for both sides are experienced in complex litigation, and Class Counsel in particular have extensive experience in consumer class actions, including those brought under the FCRA.

Accordingly, this factor weighs in favor of final approval of the Settlement. *See, e.g., Cleveland*, 2022 WL 2256353, at *5 (finding this factor satisfied where the parties "exchanged both formal and informal discovery, and vigorously negotiated the Settlement over the course of several months"); *In re Resideo*, 2022 WL 872909, at *2 (concluding that this factor weight in favor of final approval of settlement where the "[s]ettlement was reached after months of arm's length negotiations between experienced counsel, including a full-day mediation").

### iii. The Relief Provided is More Than Adequate

Next, the Court must consider whether "the relief provided for the class is adequate," taking into account numerous factors. Fed. R. Civ. P. 23(e)(2)(C). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607 (citing *Grunin*, 513 F.2d at 124). The Court must balance the risks and benefits of litigation against immediate recovery for the class members. *Grunin*, 513 F.2d at 124. This factor easily weighs in favor of final approval.

## 1. The costs, risks, and delay of trial and appeal were significant

Here, Defendant has contested liability, including willfulness, and there is no guarantee that Plaintiff would ultimately prevail at class certification, summary judgment, at trial, or through inevitable appeals. Settlement provides certain monetary recovery which benefits Class Members *now*. And, that monetary relief provided is significant. Given the claims rate of 4.56%, each Settlement Class Member who (1) returned a valid Claim Form or (2) disputed Defendant's SSN trace reporting, which was thereafter corrected, is estimated to receive a payment of approximately $510. This is an excellent recovery given that the statutory damages range provided by the FCRA is $100 to $1,000 per violation. 15 U.S.C. § 1681n. It also compares favorably to other FCRA settlements, including those involving inaccurate reporting, which sometimes settle for less than $100 per class member.[4] And, this monetary relief is in addition to injunctive relief—practice changes to

---

[4] *See, e.g.*, *Legrand v. IntelliCorp Records, Inc.,* No. 1:15-cv-02091 (N.D. Ohio) (settlement agreement filed April 24, 2017, ECF No. 83-2, final approval order entered November 1, 2017, ECF No. 94) (payments of $148 to class members who were falsely reported as having government sanctions); *Ryals v. HireRight Solutions, Inc.*, No. 09-cv-625, ECF No. 127 (E.D. Va. Dec. 22, 2011) (final approval of settlement for inaccurate criminal record reporting, providing $15-$200 gross per class member); *Roe v. IntelliCorp Records, Inc., Insurance Info. Exchange, LLC*, No. 1:12-cv-2288-JG (N.D. Ohio) (stipulation of settlement filed Oct. 18, 2013, ECF No. 121; final approval order entered June 5, 2014, ECF No. 139) (class members received $50-$270 in inaccurate criminal background checks case); *Speers v. Pre-Employ.com, Inc.*, No. 3:13-cv-1849-TC (D. Or.) (settlement agreement filed July 30, 2015, ECF No. 66-1; final approval order entered Feb. 10, 2016, ECF No. 83) (class members in case alleging out-of-date and incomplete background checks received about $153 each); *Ridenour v. Sterling Infosystems, Inc.*, No. 2:15-cv-00041 (E.D. Va.) (preliminary approval order entered February 15, 2017, ECF No. 173, final approval order entered July 26, 2017, ECF No. 204) (settlement involving inaccurate background checks providing about $87 per class member).

Defendant's SSN reporting. *See, e.g., Phillips*, 2022 WL 832085, at *3 (finding settlement adequate where it included both monetary and injunctive relief).

These results are all the more impressive given the very real risks, costs, and delay of continued litigation. This matter has been ongoing for over two years, involving significant discovery, extensive data analysis, and involved arm's length negotiations. It is a complex matter, in which both sides argue that their position continues to have merit. Should litigation continue, the Parties would engage in expert discovery, class certification, summary judgment, pretrial motions, trial, and inevitable appeals. During each of those phases, the Class would receive no relief, and costs associated with litigation would continue to rise. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Keil v. Lopez*, 862 F.3d 685, 696, 698 (8th Cir. 2017) (citation omitted). "The nature of the litigation to date, and the certainty of continued complex and expensive proceedings, counsels in favor of approval." *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009).

Beyond the general litigation risks involved in class actions, here, there are risks specific to FCRA claims. In particular, establishing liability in this case was far from certain. Notably, "it is well established that the FCRA is not a strict liability statute." *Murphy v. Midland Credit Mgmt., Inc*., 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006) (citing *Hauser v. Equifax, Inc*., 602 F.2d 811, 814 (8th Cir. 1979)). Accordingly, in order to recover statutory damages on behalf of the Settlement Class, Plaintiff would have had to show that Defendant's violations were "willful." 15 U.S.C. § 1681n. This can be a high bar and presents a real risk to recovery. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69

(2007). Indeed, FCRA plaintiffs can lose on this standard even after a successful verdict at trial. *See Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict, holding that consumer reporting agency's conduct did not constitute a willful violation of the FCRA).

All told, the risks, costs, and delay of further litigation warrant settlement approval here. *Yarrington v. Solvay Pharma., Inc.*, 2010 WL 11453553, *9 (D. Minn. March 16, 2010) (finding class counsel had "exhaustively assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal" where parties had extensive motion practice, exchanged discovery, and engaged in mediation).

## 2.    The method of distributing relied to the class is effective

Here, after any Court-approved deductions for Class Counsel's fees and costs, Administrative Costs, and the Class Representative Service Payment, the remaining amount will be distributed *pro rata* to Class Members who submitted a simple Claim Form attesting that they suffered some harm from Defendant's SSN trace reporting. (S.A. ¶ 4.1.) Additionally, the 87 individuals who disputed information in the SSN Trace section of their reports which Defendant thereafter revised, will receive a *pro rata* payment automatically. (*Id.*) Moreover, all Class Members can elect their preferred payment method. (*Id.*) Finally, if there are sufficient leftover funds after the first distribution of *pro rata* payments, a second round of payments will be made to eligible Class Members. (*Id.* ¶ 7.4.6.)

This straightforward "claims process and distribution method are reasonable." *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2024 WL 1122420, at *6 (N.D.

Cal. Mar. 14, 2024) (finding this factor satisfied where class members "need only submit a simple claim form" to receive payment and could "elect their preferred method of payment," and where redistribution would be made, if economically feasible); *see also Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, 2019 WL 13037028, at *8 (M.D. Fla. Aug. 22, 2019) (finding this factor satisfied where certain class members would receive payment automatically, and others would have to "file a simple claim form" in order to receive payment); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) ("[T]he Court concludes that the distribution method and claims process is reasonable. Class Members who seek benefits under the Settlement must only submit a relatively simple claim form with basic questions about class membership.").

### 3.  The terms of the award of attorney's fees are reasonable

Finally, and as discussed in more detail in the memorandum in support of Plaintiff's Motion for Attorneys' Fees, Class Counsel's requested fee award is reasonable. (*See generally* ECF No. 72.) Moreover, Class Member payments and the approved Class Counsel fees will be paid just 14 days apart. (S.A. ¶¶ 7.3.1, 7.4.4.) This factor therefore weighs in favor of final approval. *See, e.g., Razo v. AT&T Mobility Servs., LLC*, 2023 WL 3093845, at *16 (E.D. Cal. Apr. 26, 2023) (concluding that "the amount of fees and the timing of the payment do not weigh against final approval of the Settlement" where "Class Counsel will receive payment at the same time as Class Members"); *Hall v. Accolade, Inc.*, 2020 WL 1477688, at *9 (E.D. Pa. Mar. 25, 2020) (similar).

### iv.    Class Members are Treated Equitably

Moreover, the Parties negotiated a settlement structure that treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). In particular, it is appropriate that certain Class Members—i.e., those who already disputed information in the SSN Trace section of their background reports, which was then revised—will receive payment without needing to submit a Claim Form, while other Class Members must submit a Claim Harm with a simple attestation of harm. *See*, *e.g.*, *Thomas v. Backgroundchecks.com*, No. 13-29, ECF No. 115 (E.D. Va. Aug. 11, 2015) (final approval of FCRA settlement with some class members being eligible to receive additional payments by asserting certain types of harm); *Ridenour v. Multi-Color Corp., Sterling Infosystems, Inc*., No. 15-41, ECF No. 204 (E.D. Va. July 26, 2017) (final approval of class settlement under which class members who had disputed their reports received automatic payments, while others had to submit claim form with attestation in order to recover). Notably, no Settlement Class Members complained about the fact that certain Class Members were required to attest to having experienced harm in order to recover.

### B.    The Settlement Satisfies the *Van Horn* Factors

### i.    The Merits of Plaintiff's Case, Weighed Against the Terms of the Settlement, Weigh in Favor of Final Approval

As discussed in greater detail above, in the analysis of the adequacy requirement under Rule 23(e)(2), the Settlement here provides meaningful monetary and injunctive relief to Class Members, while at the same time avoiding the very real risks, costs, and delay that would be inevitable if this case proceeded in litigation and, ultimately, to trial

and appeals. For similar reasons, the first *Van Horn* factor supports approval of the Settlement. *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *5 (D. Minn. Apr. 5, 2016) (finding this factor satisfied where "[t]here are several issues that remain contested," "[t]he outcome of a trial and any subsequent appeal is uncertain," and the settlement "provides for substantial and direct benefits to the class").

### ii.    Defendant's Financial Condition Supports the Settlement

The second *Van Horn* factor also weighs in favor of final approval of the Settlement, as Defendant is in a secure financial position. *See*, *e.g.*, *Cleveland*, 2022 WL 2256353, at *6 ("Whirlpool is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship because of the Settlement. As such, this factor supports granting final approval of the settlement."); *Khoday*, 2016 WL 1637039, *6 (finding this factor satisfied where "Defendants voluntarily agreed to the payment amount in the Settlement Agreement and there is no indication that Defendants' financial condition would prevent it from making the final payment").

### iii.    The Complexity and Expense of Further Litigation Weigh in Favor of Final Approval

Again, as discussed in more detail herein, "[Defendant] advances numerous defenses and, therefore, continued litigation would result in considerable time and expense." *Phillips*, 2022 WL 832085, at *4. As the court determined in *Phillips*: "If the Settlement is approved, this case will be resolved before the completion of class certification, summary judgment, expert discovery, and trial preparation. Because the complexity and expense of continued litigation are significant, this factor supports granting

final approval of the Settlement Agreement." *Id.* at *4. The same is true here, and the Settlement should be finally approved. *See also In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009) ("The nature of the litigation to date, and the certainty of continued complex and expensive proceedings, counsels in favor of approval.").

### iv.   The Response of Class Members Supports the Settlement

Finally, "[t]he number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable." *Cleveland*, 2022 WL 2256353, at *7. *See also Van Horn*, 840 F.2d at 607. Here, by the objection and opt-out deadline, Class Members had submitted zero objections and only six opt-outs. This response indicates a positive reaction from the Settlement Class to the Settlement. *See, e.g., Marshall v. Nat'l Football League*, 787 F.3d 502, 513 (8th Cir. 2015) (approving a settlement with 180 of 400 class members objecting); *In re Resideo*, 2024 WL 95194, at *3 ("Ultimately, the overwhelming majority of investors have offered no objection. As such, this factor also weighs in favor of the Settlement."); *Khoday*, 2016 WL 1637039, *6 (support of class representatives coupled with the fact only .0008% of the entire class opted out "suggests the settlement is favorable to what most members believe their claims are worth."); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (zero objections "strongly supports settlement approval").

Moreover, the 4.56% claims rate here further suggests that the Class supports the Settlement and, ultimately, supports a finding that the Settlement is fair, reasonable, and adequate. *See Jones v. Monsanto Co.*, 38 F.4th 693, 701 (8th Cir. 2022) (affirming order

of the district court granting motion for final approval of class settlement with 2-3% estimated claims rate); *Keil*, 862 F.3d at 697 ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with claims rate of roughly 0.23 percent); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (approving settlement class with claims rate of less than 4%).

## II.    Certification of the Settlement Class is Appropriate

At preliminary approval, the Court "preliminarily certifie[d] this case as a class action, for settlement purposes only, on behalf of the Class defined in the proposed Settlement Agreement." (ECF No. 70 at 2.) Specifically, the Court found that "the Settlement Class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)" and also satisfied Rule 23(b)(3). (*Id.*) The Court's preliminary conclusions were correct. The requirements of Rule 23(a) and 23(b)(3) are both satisfied, and the Court should certify the Settlement Class for settlement purposes.

### A. The Settlement Class Satisfies Rule 23(a)

#### i.    The Settlement Class is Numerous

First, Rule 23(a)(1) is satisfied. In the Eighth Circuit, "[n]o arbitrary rules regarding the necessary size of classes have been established." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). "In general, however, a class of 40 or more members raises a

presumption of impracticability of joinder based on numbers alone." *Murphy v. Piper*, 2017 WL 4355970, at *3 (D. Minn. Sept. 29, 2017) (internal quotations omitted). Here, where there are more than 60,000 Settlement Class Members, the Class is sufficiently numerous.

### ii.    There Are Common Questions of Law and Fact

Second, the Settlement Class satisfies Rule 23(a)(2). For commonality, "the plaintiff [must] demonstrate that the class members have suffered the same injury," and that their common complaint "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338, 350 (2011).

Numerous common issues exist here, including whether Defendant's practice of reporting that it could not verify or validate certain SSNs violated the FCRA's requirement, at 15 U.S.C. § 1681e(b), that Defendant follow reasonable procedures to assure maximum possible accuracy. *See, e.g., Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 205 (E.D. Va. 2015) (finding consumer reporting agency's procedures to "raise a common contention of reasonableness that can be resolved with common answers on a classwide basis"); *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 2019 WL 3406593, at *6 (S.D.N.Y. July 29, 2019) (finding "whether defendant followed reasonable procedures to ensure the accuracy of its records" to be a common question). Whether Defendant's alleged violations of the FCRA were willful under 15 U.S.C. § 1681n is also a common question. *See, e.g., Soutter*, 307 F.R.D. at 207 ("[C]ommon evidence applicable across all class members regarding willfulness will resolve a common contention and drive the litigation forward by common answers."); *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *6

20

(E.D. Va. Oct. 31, 2014) ("[T]he question of willfulness is [] a common question."). Commonality is thus established.

### iii.    Plaintiff's Claims Are Typical of the Settlement Class

Third, Rule 23(a)(3) is satisfied. Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-62. "Factual variations will not necessarily preclude certification if 'the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *City of Farmington Hills Employee Retirement System v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 352 (D. Minn. 2012) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Plaintiff's claims are typical of those of Settlement Class Members. Defendant allegedly inaccurately reported that it was unable to verify Plaintiff's SSN—just as it did for all members of the Settlement Class. Plaintiff's claims thus rest on the same legal and factual issues as those of Class Members—the hallmark of typicality. *See Cleveland*, 2022 WL 2256353, at *8 (finding typicality satisfied where "[t]he Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members").

### iv.    Plaintiff and Class Counsel Have Adequately Represented the Class

Fourth, Plaintiff and Class Counsel satisfy Rule 23(a)(4). "In order to satisfy the adequacy requirement, Plaintiff must show that: (1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the

21

representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills*, 281 F.R.D. at 353.

Here, Plaintiff has fairly and adequately represented the interests of the Settlement Class. Plaintiff assisted with the investigation of the facts of the case, reviewed and approved the First Amended Complaint, regularly consulted with Class Counsel throughout the litigation, including during settlement negotiations, and reviewed and approved the Settlement Agreement. (ECF No. 73 ¶ 18.) Moreover, and as the Court previously determined, he "has no interests that are adverse or antagonistic to the interests of the Class Members." (ECF No. 70 at 3.)

Class Counsel are also adequate. As the Court concluded at the preliminary approval stage, E. Michelle Drake, John Albanese, and Ariana Kiener have thoroughly identified and investigated the claims at issue in this matter, have "experience with handling class actions, complex litigation, and claims of the type asserted in this Action, [and] knowledge of the applicable law," and have committed significant resources to representing the Class. (ECF No. 70 at 4-5; *see generally* ECF No. 73.)

Adequacy is easily established here. *See, e.g.*, *Kruger*, 2023 WL 5665215, at *3 (finding adequacy satisfied at final approval where class representatives had "actively represent[ed] the interests of the proposed class" and "Class Counsel have demonstrated their determination to vigorously prosecute this case [and] are highly experienced in complex class action litigation and have negotiated many class action settlements of this magnitude"); *Cleveland*, 2022 WL 2256353, at *5 (finding adequacy met at final approval

where "Class Counsel each have more than a decade of experience in complex litigation" and class representatives reviewed pleadings and regularly communicated with counsel).

## B. The Settlement Class Satisfies Rule 23(b)(3)

### i. Common Issues Predominate

The common factual and legal issues regarding Class Members' claims are based on Defendant's alleged standardized policies and procedures. Whether Defendant's (1) procedures were reasonable and (2) alleged violations were willful are common issues that predominate over any individualized concerns. *See, e.g.*, *Soutter*, 307 F.R.D. at 215-16 (finding that common questions concerning willfulness and reasonableness of defendant's procedures predominated); *Martinez v. Avantus, LLC*, 2023 WL 112807, at *9 (D. Conn. Jan. 5, 2023) ("[T]he core inquiries in this case—whether the name-matching logic runs afoul of the FCRA and whether that violation was willful—can be resolved through generalized proof and are more substantial than any individualized issue."). Common issues predominate.

### ii. Class Treatment is a Superior Means of Resolution

Next, and as the Court has already determined, class treatment here "will be efficient and manageable, promoting judicial economy, and superior to other available methods for a fair and efficient adjudication of this controversy, consistent with Rule 23(b)(3)." (ECF No. 70 at 2.) *See also* 7 Newberg on Class Actions § 21:4 (6th ed. 2022) ("FCRA matters remain good candidates for class actions – they tend to involve a large number of harmed individuals with small claims, often disbursed throughout the country.").

A class action is superior to other available methods for the fair and efficient adjudication of this case. This is particularly true here in light of the relatively small amount of the damages claims that would be available to individuals, with the FCRA providing for statutory damages of $100 to $1,000 per violation. Moreover, Rule 23(c) permits individual class members to opt out and pursue their own actions separately if they believe they can recover more in an individual suit. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Superiority is thus met.

### III.    Notice to the Class was Reasonable

Additionally, Notice to Class Members has been reasonable. The Administrator executed the approved Notice Plan, with all Class Members receiving: (1) a Postcard Notice, with a Claim Form included if required, (2) an Email Notice, if an email address was provided, and/or (3) as appropriate, a Reminder Notice. All Notices provided, *inter alia*, information about the settlement terms; the contemplated requests for attorneys' fees and costs, a service award, and settlement administration expenses to be paid from the Settlement Fund; and Class Members' rights, and the deadlines by which to exercise those rights. The Notices further directed Class Members to the Settlement Website, which hosts the detailed Long Form Notice, as well as relevant litigation and settlement documents. The Administrator also maintained a toll-free telephone line for Class Member inquiries.

As the Court determined at the preliminary approval stage, the Parties' proposed Notice Plan was "the best practicable under the circumstances." (ECF No. 70 at 3.) Indeed, similarly robust notice plans are routinely found to satisfy Rule 23 and due process. *See, e.g., Phillips*, 2022 WL 832085, at *5 ("The record reflects that the Notice Plan, which

24

consisted of Email Notice and Postcard Notice sent directly to Settlement Class Members, as well as a Long Form Notice, Settlement Website, and toll-free phone line, comported with due process [and] Rule 23."); *Khoday*, 2016 WL 1637039, *7 (notice plan including email, mail, reminder notices met due process and "was more than reasonable, and gave due, adequate, and sufficient notice to all individuals entitled to receive notice"); *Roeser v. Best Buy Co., Inc.*, 2015 WL 4094052, *8 (D. Minn. July 7, 2015) (email and mail notice "fully satisfied the requirements of Rule 23 and due process") (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)).

## IV.    Settlement Administration Expenses Should be Reimbursed

Finally, the Administrator's expenses should be approved for deduction from the Settlement Fund, as is appropriate in class action settlements with a common fund. *See*, *e.g.*, *Taylor v. Inflection Risk Sols., LLC*, 2022 WL 16949543, at *2 (D. Minn. Nov. 15, 2022); *Smith v. Questar Capital Corp.*, 2015 WL 9860201, *8 (D. Minn. Sept. 11, 2015).

The Administrator has executed its duties to date in accordance with the Preliminary Approval Order and Settlement Agreement, by, for example, preparing and sending Notices, processing Claim Forms, and instituting the toll-free telephone line and Settlement Website. Should the Court grant final approval, the Administrator will additionally establish the Settlement Fund, calculate and distribute Class Members' settlement payments, and continue to maintain the Settlement Website and toll-free telephone line.

The amount requested by the Settlement Administrator for reimbursement is $124,436.00. (Admin. Decl. ¶ 14.) The fact that settlement administration expenses would

be paid from the Settlement Fund was included in the Notice to the Settlement Class, to which no objections have been received.

## **CONCLUSION**

Based on the foregoing, the Court should grant Plaintiff's Motion and enter the Final Approval Order.

Respectfully submitted,

Dated: August 21, 2024                /s/John G. Albanese
                                      BERGER MONTAGUE PC
                                      John G. Albanese, Bar No. 0395882
                                      E. Michelle Drake, Bar No. 0387366
                                      Ariana Kiener, Bar No. 0402365
                                      1229 Tyler Street NE, Suite 205
                                      Minneapolis, MN 55413
                                      T. 612.594.5999
                                      F. 612.584.4470
                                      jalbanese@bm.net
                                      emdrake@bm.net
                                      akiener@bm.net

                                      *Attorneys for Plaintiff*