UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Burak C. Bingollu,<br>on behalf of himself and<br>all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>One Source Technology, LLC<br>d/b/a Asurint,<br><br>      Defendant. | Case No. 22-cv-77 (DTS)<br><br><br><br>**ORDER** |

      Plaintiff Burak C. Bingollu moves for the approval of a class action settlement, Dkt. No. 78, and for attorneys' fees, costs, and a class representative service award, Dkt. No. 71. A hearing on these unopposed motions was held September 11, 2024. Plaintiff's submissions and the record establish that: (1) class certification is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2); and (3) the requested attorneys' fees, costs, and class-representative payment are reasonable. Therefore, the motions are granted.

## BACKGROUND

      Plaintiff brought this class action in 2022,[1] alleging that Defendant One Source Technology, LLC (One Source) violated the Fair Credit Reporting Act (FCRA),

---

[1] Former named plaintiff Sharon Dekontee Wright originally brought this class action. *See* Compl., Dkt. No. 1-1. During the mediation process, Ms. Wright decided to pursue her claims against One Source individually. *See* Pl.'s Mem. in Supp. Mot. Prelim. Approval 3–4, Dkt. No. 65. Mr. Bingollu was added as a named plaintiff in the Amended Complaint. Am. Compl., Dkt. No. 41.

15 U.S.C. § 1681, *et. seq.* Compl., Dkt. No. 1-1. According to the Amended Complaint, One Source is a background check company that creates reports for employers. Am. Compl. ¶ 10, Dkt. No. 41. These reports help employers validate candidate information, including candidates' social security numbers. *Id.* ¶ 12. At some point, One Source adopted a common policy of reporting that any social security numbers issued after June 24, 2011, were incapable of being validated. *Id.* ¶ 13. This resulted in One Source inaccurately reporting that relatively new social security numbers were incapable of verification. *Id.* ¶ 15. Plaintiff alleged that One Source's policy willfully violated 15 U.S.C. § 1681e(b), a provision of the FCRA requiring consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).[2]

Plaintiff engaged in discovery to evaluate the strength of his § 1681e(b) claim. *See* Albanese Decl. in Supp. Mot. Prelim. Approval ¶¶ 4–6, Dkt. No. 66. After an initial round of mediation in 2023, the parties reached a settlement in February 2024. *See* Notice of Settlement, Dkt. No. 59; Albanese Decl. in Supp. Mot. Prelim. Approval Ex. A, Dkt. No. 66-1 (Settlement Agreement). The settlement class is defined as follows:

> All individuals who were the subject of consumer reports prepared by Defendant from December 27, 2019 to May 1, 2023 about whom Defendant reported: (1) through the SSN Trace Level 2 product, "unable to validate" and/or "not verified"; or (2) individuals who disputed information in the SSN Trace section of their background reports, which was then revised.

Settlement Agreement ¶ 1.43. Based on this definition, 60,405 class members were identified. Jenkins Decl. ¶ 4, Dkt. No. 75. On April 4, 2024, this Court entered an order

---

[2] One Source disputes these allegations.

granting preliminary approval of the proposed class action settlement. Dkt. No. 70. A declaration of compliance with the provisions of the settlement agreement and preliminary approval order relating to notice was filed with the Court. *See* Jenkins Decl., Dkt. No. 75. As of the objection deadline, no settlement class member had filed an objection. *Id.* ¶ 13. On September 11, 2024, a final fairness hearing was held. *See* Min. Entry, Dkt. No. 82. No class members appeared at the final fairness hearing.

## ANALYSIS

**I.   Class Certification**

To certify a class for settlement purposes, "the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied." *Kruger v. Lely N. Am., Inc.*, No. 20-cv-629, 2023 WL 5665215, at *2 (D. Minn. Sept. 1, 2023). The four prerequisites of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See Morrison v. Entrust Corp.*, No. 23-cv-415, 2024 WL 2207563, at *3–4 (D. Minn. May 14, 2024). Rule 23(b)(3) requires a plaintiff to demonstrate predominance and superiority. *Id.* at *5. Take each requirement in turn.

Numerosity requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The size of the class is an important factor, and courts in the Eighth Circuit often find that classes exceeding 40 members meet the numerosity requirement. *Murphy v. Piper*, No. 16-cv-2623, 2017 WL 4355970, at *3 (D. Minn. Sept. 29, 2017). Numerosity is satisfied in this case because joinder of the more than 60,000 class members would plainly be impracticable. *See, e.g.*, *Kruger*, 2023 WL 5665215, at *2 (concluding that joining 400 class members would be impracticable).

3

Commonality requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, class members' claims must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That's the case here. Plaintiff's § 1681e(b) claim challenges procedures common to the class—One Source's reporting of social security numbers issued after June 24, 2011, as incapable of being validated. Whether One Source's procedures were reasonable and whether it willfully violated the FCRA by implementing that procedure are issues which could be resolved in a single stroke. *See Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 199–208 (E.D. Va. 2015) (finding commonality satisfied by a § 1681e(b) claim).

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Mr. Bingollu's § 1681e(b) claim is typical of the class. He received his social security number after June 24, 2011, and One Source reported his social security number as incapable of being validated within the class definition's date range. Am. Compl. ¶¶ 31, 35–41.

Adequacy requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy adequacy of representation, "Plaintiff must show that: (1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints

4

will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank*, 281 F.R.D. 347, 353 (D. Minn. 2012). Mr. Bingollu has played an active role in litigation by assisting in investigation of the case, reviewing and approving pleadings, and remaining in contact with class counsel. *See* Albanese Decl. in Supp. Mot. Att'ys Fees ¶ 18, Dkt. No. 73. Class counsel are experienced in prosecuting consumer protection class actions. *Id.* ¶ 9. And no information suggests that Mr. Bingollu has any conflicts with his class members. That's enough to satisfy adequacy.

Predominance and superiority require Plaintiff to demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members and [(2)] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied here because whether One Source used reasonable procedures and whether its alleged violations were willful are common issues that predominate over individualized concerns. *See Soutter*, 307 F.R.D. at 215–16 (finding similar claim to satisfy predominance); *Martinez v. Avantus, LLC*, 343 F.R.D. 254, 267 (D. Conn. 2023) (same). Superiority is satisfied by the large class size but small value of each class member's claim, meaning most class members "would not realistically have a day in court" absent class certification. *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1009 (D. Minn. 2023). Rules 23(a) and 23(b)(3) satisfied, certification of the settlement class is appropriate.

**II.   Settlement Approval**

A court may only approve a class-action settlement after "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts must consider four factors: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the

defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). The first factor is the most important. *Id.*

Having considered the relevant factors, the Court finds the terms of the settlement agreement to be fair, reasonable, and adequate. One Source will pay $2,400,000 as a common settlement fund. Settlement Agreement ¶ 1.45. Based on the number of claim forms submitted, class counsel estimate that this settlement fund will result in net payments of $510 per class member who submits a claim. Pl.'s Mem. in Supp. Mot. Final Approval 7, Dkt. No. 80. In no circumstance will any portion of the settlement fund revert to One Source. Settlement Agreement ¶ 4.2. And One Source has made process changes to how it reports results for the social security number trace section of its background reports. *Id.* ¶ 2.6. This $510-per-member result compares favorably to other FCRA settlements and the FCRA's statutory damages range. *See* Pl.'s Mem. in Supp. Mot. Final Approval 12 n.4, Dkt. No. 80 (collecting cases); 15 U.S.C. § 1681n. Moreover, Plaintiff was not guaranteed to prevail on the merits—One Source contested the reasonableness of its procedures and willfulness. *See* Settlement Agreement ¶ 2.4. The settlement, reached at an early stage of litigation, allows the parties to avoid substantial expense and provides relief to the class members sooner. Plaintiff reasonably predicts that the parties would engage in expert discovery, class certification, summary judgment, trial, and perhaps appeals if this case continues. Pl.'s Mem. in Supp. Mot. Final Approval 16–17, Dkt. No. 80. No party disagrees that One Source is in good financial standing, capable of paying for its settlement obligations. No class member has opposed the settlement. And

6

finally, the settlement was the product of arm's length negotiations, including an independent mediator. *See* Albanese Decl. in Supp. Mot. Att'ys Fees ¶ 14, Dkt. No. 73.

### III. Attorneys' Fees, Costs, and Service Award

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When a class action leads to a common fund for the class, courts may award fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Under the common-fund doctrine, fees are awarded based on a percentage of the common fund recovered. *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also well established." *Kruger*, 2023 WL 5665215, at *5 (quoting *In re Xcel*, 364 F. Supp. 2d at 991). To determine the reasonableness of a fee award under the common-fund approach, courts may consider several relevant factors. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 n.7 (8th Cir. 2018) (listing twelve factors).

Having considered these factors, Plaintiff's request for one-third of the settlement fund—$800,000—is reasonable: (1) the 377.2 hours class counsel expended on this case is not insignificant; (2) continued litigation of this case would be time consuming, expensive, and reasonably complicated; (3) the lawyers in this case are highly skilled and experienced; (4) class counsel have pursued this case on a fully contingent basis; (5) the benefits for the class are substantial; (6) Plaintiff's lodestar computation results in a multiplier slightly over 3, which is reasonable given the results obtained and early settlement; and (7) the request for one-third of the settlement fund is within the typical

range approved in the Eighth Circuit. *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). The requests for $16,969.63 in costs and a $5,000 service award for Mr. Bingollu are also reasonable.

## ORDER

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Final Approval of Class Action Settlement [Dkt. No. 78] is **GRANTED**;

2. Final certification of the settlement class is **GRANTED**;

3. Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Class Representative Award [Dkt. No. 71] is **GRANTED**;

4. Class counsel are awarded $816,969.63 in fees and costs;

5. Class representative Burak C. Bingollu is awarded a service award of $5,000;

6. Final approval of the methods and forms of notice provided to class members is **GRANTED**; and

7. The Court shall retain jurisdiction over the subject matter and the parties with respect to the interpretation and implementation of the settlement agreement for all purposes.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 20, 2024               s/David T. Schultz_____
                                        DAVID T. SCHULTZ
                                        U.S. Magistrate Judge